An order will be entered in accordance with this opinion.

LUSTIG, TRUSTEE, v. FRANKEL ET AL.

[Cite as Lustig v. Frankel (1972), 32 Ohio Misc. 141.]

142

(No. 767204—Decided May 16, 1972.)

Probate Division, Common Pleas Court of Cuyahoga County.

Mr. *Morton B. Icove,* for plaintiff.
Mr. *Fred D. Shapiro,* for defendant Peg Levine et al.
Mr. *James I. Huston,* for defendant Minnie Stotter et al.
Mr. *Philip Kasdan,* for defendant Regina Oettinger et al.
Mr. *Neil Kurit,* for defendant Belle Frankel et al.
Mr. *Joel Garver,* for defendant guardian ad litem.
Mr. *Nelson E. Weiss,* for defendant Brandeis University.
Mr. *Lloyd S. Schwenger,* for defendant Carol Oettinger.
Mr. *Jerome M. Friedlander,* for defendant Naomi Koblitz.
Mr. *Michael R. Oker,* for defendant Jewish Convalescent Hospital.
Mr. *George S. Womer,* for defendant Christian Home for Children.
Mr. *Julius B. Amber* and Mr. *Suggs I. Garber,* for defendant Jewish National Fund.
Mr. *Robert I. Koplow,* for defendant David Brown.
Mr. *John K. Purcell,* for defendant WISH, Inc.
Mr. *Abraham S. Wilk,* for defendant Adult Retardes Center, Inc.
Mr. *Francis X. Feighan,* for defendant Parmadale Children's Village.
Mr. *Ermer L. Watson,* for defendant Half Way Home.

*Mr. Irwin M. Feldman*, for defendant Mount Sinai Hospital.

*Mr. Harold Galvin*, for defendant Menorah Park Jewish Home for Aged.

*Mr. Ronald M. Appel*, for defendant American Friends of Hebrew, Inc.

*Mr. Robert B. Rottman*, for defendant Jewish Hospital and Research Center.

ANDREWS, Chief Referee. This is an action to construe the will of Henry Frankel, who died on October 20, 1966. He was survived by a wife but had no lineal descendants.

The action is brought by the trustee of the testamentary trust created by Item III, Section C of Mr. Frankel's will. The trust consists of that fraction of Mr. Frankel's residuary estate remaining after a marital deduction bequest to his wife, Jennie Frankel.

Under Item IV, Section A of the will, Mrs. Frankel was entitled to the net income of the trust during her life, and invasion of principal was authorized under certain conditions.

Item IV, Section B directs that at her death the remainder of the trust be distributed in accordance with the provisions of Item V. Mrs. Frankel died on December 13, 1970.

In plaintiff's complaint, this court is asked to determine four questions concerning the construction and effect of certain portions of the will, in order that plaintiff may properly distribute the trust property and terminate the trust.

The second, third, and fourth questions have been answered in previous proceedings and are no longer before us.

It was necessary to postpone consideration of the first question because of an action to contest the alleged last will of Jennie Frankel. That action has now been terminated by an agreement among the parties, and a judgment has been entered thereon. The judgment included a directed verdict, finding that the paper writings dated May 8, 1968, and April 11, 1969, which were admitted to

probate in this court on January 4, 1971, are the last will and testament and codicil of Jennie Frankel.

The question before us concerns the meaning of the first paragraph in Item V of Henry Frankel's will.

Henry and Jennie Frankel executed wills on December 16, 1965. Their wills were witnessed by the same persons and were identical except for slight and immaterial differences in language, due to the fact that one will was his and one will was hers.

Item V of each will, setting forth provisions for final distribution of the trust estate, contained a long list of identical pecuniary beneficiaries, including, among others, "blood relatives" of the wife, "blood relatives" of the husband, employees of Henry Frankel, Inc., and numerous charitable and educational institutions.

The second paragraph of Item V in each will contained the following:

"Should the net assets of my estate be insufficient to pay all of the specific (*sic*) bequests made in this item, then all the gifts herein shall abate proportionately."

Item VI of each will directs that the residue of the trust estate be divided into sixteen equal shares. Some of the identical sixteen beneficiaries are blood relatives of Henry Frankel; some of Jennie Frankel.

In Henry Frankel's will, the bequests to "blood relatives" of his wife appear in Sections D, E, and F of Item V.

The first paragraph of Item V reads as follows:

"In the Will of my wife executed of even date herewith, all of the specific bequests contained in this Item V are also provided for. I direct that where a gift is made to a blood relative of my wife, such gift shall be paid out of my estate only if same cannot be paid out of my wife's estate. If a bequest is paid out of my wife's estate, such bequest shall lapse and become a part of the residue of my estate. Insofar as a bequest is not paid out of my wife's estate, then and only then shall it be paid out of my estate. It is my intention and I, therefore, direct that the gifts contained in this Item V shall be paid only once and under no circumstances shall any legatee receive more

than the amount stipulated for him, whether same be paid out of my estate alone, out of my wife's estate, or partly out of both.''

Item V of Jennie Frankel's will of December 16, 1965, contained an identical paragraph relating to her bequests to her husband's blood relatives.

On May 8, 1968, more than a year and a half after her husband's death, Jennie Frankel created a revocable *inter vivos* trust, funded by $5.00 in cash. Under the terms of the trust, Jennie Frankel was to receive the entire net income during her life, and after her death the trustee was to distribute specified amounts to named charitable and educational institutions, and the balance to whatever charities he should select.

On the same date, Jennie Frankel executed a new will, revoking all prior wills. The new will eliminated entirely those of her blood relatives who were beneficiaries in both her 1965 will and in Item V, Sections D, E, and F of Henry Frankel's identical will. After a number of pecuniary bequests to various individuals and charitable organizations, she bequeathed the residue of her estate to the trustee under the aforementioned trust agreement, to be held, managed, and disposed of in accordance with the provisions of the trust agreement as modified prior to her death. See R. C. 2107.63, the so-called ''pour-over'' statute.

On January 14, 1970, Mrs. Frankel executed a ''First Modification'' to her trust agreement. In this document she provided for the payment, after her death, of $5,000.00 each to some, but not all, of her blood relatives named as beneficiaries in both her 1965 will and in Item V, Sections D, E, and F of her husband's identical will. The trustee of Mrs. Frankel's trust has already made the $5,000.00 payments to the persons specified.

The following chart may serve to clarify the situation. The first column lists those ''blood relatives'' of Jennie Frankel who were named in Item V, Sections D, E, and F of Henry Frankel's will and who, of course, were likewise named in Jennie Frankel's 1965 identical will. The second column shows the amount bequeathed under each of the

1965 wills. The third column shows the amount received under Jennie Frankel's trust as modified.

| Name | 1965 Wills | Modification of Trust |
|------|-----------|----------------------|
| Minnie Stotter | $10,000.00 | $5,000.00 |
| Regina Oettinger | 10,000.00 | 5,000.00 |
| Robert Stotter | 15,000.00 | Nothing |
| Jack Oettinger | 5,000.00 | Nothing |
| Monroe Koblitz | 15,000.00 | Nothing |
| Barbara Beerman | 5,000.00 | 5,000.00 |
| Daniel Stotter | 5,000.00 | 5,000.00 |
| Richard Stotter | 5,000.00 | 5,000.00 |
| Michael Oettinger | 5,000.00 | 5,000.00 |
| Joan Oettinger (Baeder) | 5,000.00 | 5,000.00 |
| Carol Oettinger | 5,000.00 | 5,000.00 |

In his complaint, plaintiff asks this court to determine whether Jennie Frankel's "blood relatives" named in Item V, Sections D, E, and F of Henry Frankel's will, are to participate in the distribution of Henry Frankel's testamentary trust. My answer is that they are not to participate.

By way of introduction, when I speak of Jennie Frankel's blood relatives, I am referring only to those named as beneficiaries in the above sections of Henry Frankel's will.

In their briefs, counsel have raised the issue as to whether the $5,000.00 each, paid to some of the blood relatives of Jennie Frankel from her *inter vivos* trust, as augmented by the "pour-over" from her estate, constitute bequests "paid out of my wife's estate" within the meaning of the third sentence in the first paragraph of Item V. (For these payments, see my chart *supra*.)

Counsel for Henry Frankel's blood relatives maintain that they do, for which reason the recipients are barred, by the second clause of that sentence, plus the last

sentence of the paragraph, from receiving a second payment from Henry Frankel's trust estate.

Counsel for Jennie Frankel's blood relatives contends, on the other hand, that the payments were not bequests paid out of Jennie Frankel's estate, but were payments out of her living trust. Since no bequest was paid out of Jennie Frankel's estate, he continues, there was no lapse, and Henry Frankel's estate is obligated.

Interesting as the above point may be, I am not going to decide it, but will assume, for the purposes of this opinion only, that the payments from Jennie Frankel's *inter vivos* trust are not payments of bequests from her estate within the meaning of the third sentence of the paragraph under discussion. With this assumption, I can decide the case on an issue which will affect all, rather than some, of Jennie Frankel's blood relatives. (See chart *supra*.)

That issue is as follows:

Even though Jennie Frankel revoked all the bequests in her 1965 will to her blood relatives and made no provision for them in her last will, are they nevertheless entitled to payment from Henry Frankel's testamentary trust estate of the bequests to them contained in his will?

The present case is the best example in my experience of the ancient observation by an English judge that "No will has a brother." In such a case we are not helped by the "authorities," but must go it on our own.

In addition, the basic principle of construing a will so as to get at the manifest intention of the testator is too well known to require citation of authorities.

Our task, then, is to try to decipher the first paragraph of Item V of Henry Frankel's will, giving whatever consideration is necessary and proper to other parts of the will and to the surrounding circumstances.

The first sentence of the paragraph merely states that the testator's wife has executed a will on the same date, and that all the "specific" bequests contained in Item V of Henry Frankel's will are also provided for in his wife's will. Actually, the bequests are not "specific" bequests, but are technically known as "general" bequests. They are

often called "pecuniary" bequests. However, no harm is done by the misnomer.

The second sentence, to which I will return later, is the only one dealing *specifically* with Jennie Frankel's blood relatives.

It is not entirely clear whether the third and fourth sentences refer only to Jennie Frankel's blood relatives or to *all* the so-called "specific" bequests in Item V of Henry Frankel's will. After pondering the matter, I have come to the conclusion that they are intended to cover *all* such bequests. This, of course, includes the bequests to Jennie Frankel's blood relatives.

The third sentence directs that if a bequest is paid out of the wife's estate, "such bequest (evidently meaning the corresponding bequest in Henry Frankel's will) shall lapse and become a part of the residue of my estate."

Under the assumption set forth above, no bequests to any of Jennie Frankel's blood relatives were paid out of her estate, for the very good reason that her last will contained no such bequests. Consequently, considering this sentence alone, there was no lapse.

The fourth sentence reads:

"Insofar as a bequest is not paid out of my wife's estate, then and only then shall it be paid out of my estate."

Clearly, this covers the case where there is a bequest in Jennie Frankel's will, which, for some reason, is not paid out of her estate. Does it also cover the case where there is *no* bequest in Jennie Frankel's will to the particular beneficiary named in Henry Frankel's will? Although there is some ambiguity in the language used, the more reasonable interpretation is that the sentence is intended to include the situation where there is no bequest in Jennie Frankel's last will to a particular beneficiary named in Henry Frankel's will.

If we interpret the language as not covering this latter situation, Jennie Frankel's revocation of her 1965 will and her execution of a new will omitting all the beneficiaries named in the 1965 will, would relieve Henry Frankel's trust estate of liability to *all* of his Item V beneficiaries, thus cutting off his own blood relatives and friends and the

charities. Such an interpretation would be preposterous, and nobody has suggested it. Accordingly, if we consider Jennie Frankel's blood relatives in the light of the fourth sentence alone, we would be obliged to hold that they are entitled to participate in Henry Frankel's testamentary trust estate, along with his blood relatives and other beneficiaries.

As mentioned before, however, the second sentence of the paragraph relates specifically to the blood relatives of Jennie Frankel. This indicates that the testator must have intended to treat them differently from his other beneficiaries, and, evidently, his intention was to limit, rather than expand, the liability of his trust estate to them.

Looking again at the second sentence, the testator directs that where a gift is made to a blood relative of his wife, such gift shall be paid out of his estate ''only if same cannot be paid out of my wife's estate.''

If we interpret this sentence as including the situation where Jennie Frankel has revoked a bequest, and in that sense it ''cannot be paid'' out of her estate, the sentence would be superfluous, because that situation is already covered by the fourth sentence.

How, then, shall we interpret this ambiguous sentence, recognizing that it is manifestly intended to place additional restrictions on these bequests, not present in the bequests to Henry Frankel's blood relatives and others?

As noted above, such gift shall be paid out of Henry Frankel's estate ''only if same cannot be paid out of my wife's estate.'' Considered in the light of the foregoing discussion, ''same'' must be intended to refer to a corresponding ''gift'' in Jennie Frankel's estate. Thus, we may paraphrase the sentence as meaning that such gift shall be paid out of Henry Frankel's estate, only if a corresponding gift cannot be paid out of Jennie Frankel's estate.

This presupposes a bequest in Jennie Frankel's will to the particular blood relative, which for some reason, such as lack of funds, cannot be paid out of her estate. In that event, Henry Frankel's trust estate will be liable. The purpose of the provision is to make certain that the bequests in the wife's will to her blood relatives will be paid

in full, with Henry Frankel's trust estate stepping into the breach if necessary. Unlike the bequests to his own blood relatives, those to his wife's blood relatives are not absolute, but are conditioned upon the presence of corresponding bequests in his wife's last will. It would be unrealistic to believe that, despite the inclusion of the second sentence, Henry Frankel nevertheless intended to be saddled with bequests to his wife's blood relatives when, by a later will, she saw fit to cut them off.

The manifest intent in the 1965 mutual wills was that each spouse should be primarily responsible for his or her own blood relatives, and that was the reason for the insertion of the above provision. To shift responsibility for Jennie Frankel's blood relatives to Henry Frankel's trust estate when Jennie Frankel omitted them from her own last will, is to place them in the same category as Henry Frankel's own blood relatives despite the obvious fact that the aforementioned second sentence of the paragraph in question shows an intention to treat them differently.

The above interpretation of the second sentence is not inconsistent with the last sentence in the paragraph, directing that the gifts contained in Item V shall be paid only once and that a legatee shall not receive more than the amount stipulated for him, no matter from which estate payment is made. This sentence limits each legatee to one payment, but has nothing to do with whether or not some of the bequests are conditional.

Counsel for some of Jennie Frankel's blood relatives argues that the first sentence of the paragraph is a condition of all the language that follows; in other words, that Jennie Frankel's will of December 16, 1965, will be her last will. Since the condition was not met, he argues, the whole first paragraph is of no effect, and the bequests in Item V, Sections D, E, and F of Henry Frankel's will should be paid without reference to it. This argument would result in automatically transforming Henry Frankel's conditional bequests to his wife's blood relatives into absolute bequests. I can see no justification for that position.

In Item VI of Henry Frankel's will, he directs that the residue of his estate, undoubtedly meaning the trust estate, be divided into sixteen equal shares. He then bequeaths one share to each of the sixteen persons, three of whom are blood relatives of Jennie Frankel. The absolute and unconditional nature of these bequests contrasts vividly with the restrictive language in the second sentence of the first paragraph of Item V. Had he wished the pecuniary bequests in Sections D, E, and F of Item V to his wife's blood relatives to be absolute, it would have been easy to say so, or merely to leave out the second sentence entirely, in which event all the "specific" bequests would have been treated alike.

In passing, it is interesting to note that, unlike Jennie Frankel's estate and trust, Henry Frankel's testamentary trust does not have sufficient funds to pay even his primary "specific" beneficiaries, wherefore, in accordance with the second paragraph of Item V, all of them must suffer an abatement proportionately.

If his trust estate were liable also for the bequests to Jennie Frankel's blood relatives, which total $85,000.00, the situation would be even worse. This factor, however, has nothing to do with my decision.

For the reasons given, I hold, in answer to the first question in plaintiff's complaint, that Jennie Frankel's blood relatives named in Item V, Sections D, E, and F of Henry Frankel's will, are not entitled to participate in the distribution of Henry Frankel's testamentary trust.

The matter of costs and attorney fees, including the sources of payment, is to be submitted to a judge of the Probate Division.

### Conclusion of Law

Jennie Frankel's blood relatives, named in Item V, Sections D, E, and F of Henry Frankel's will, are not entitled to participate in the distribution of Henry Frankel's testamentary trust.